David N. McDevitt
Russell S. Thompson IV
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 845-5969
Facsimile: (866) 317-2674
dmcdevitt@ThompsonConsumerLaw.com
rthompson@ThompsonConsumerLaw.com
**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaleon Akins, on behalf of herself and all others similarly situated,    Plaintiff<br><br>VS.<br><br>Seidberg Law Offices, P.C.,    Defendant. | § CASE NO. 2:18-cv-00954-DJH<br>§<br>§<br>§ **JOINT MOTION FOR**<br>§ **CLASS CERTIFICATION**<br>§ **AND FINAL APPROVAL**<br>§ **OF CLASS ACTION**<br>§ **SETTLEMENT AGREEMENT**<br>§ |

Plaintiff Aaleon Akins and Defendant Seidberg Law Offices, P.C. jointly move the Court to certify Plaintiff as class representative, certify Plaintiff's attorneys as class counsel, and grant final approval of the proposed class settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure, and, in support thereof, submit: (1) the Declaration of David N. McDevitt (Exhibit A); (2) the Affidavit of Aaleon Akins (Exhibit B); the Declaration of Manuel H. Newburger (Exhibit C); the Declaration of Bailey Hughes (Exhibit D); a proposed Final Order and Judgment (Exhibit E); and the following memorandum of points and authorities.

## I.  Introduction

On October 23, 2018, the Court granted preliminary approval of a proposed class settlement of this action, which was brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.  A final fairness hearing will be held on **March 14, 2019 at 4:00 p.m.** in Courtroom 605, Sandra Day O'Connor United States Courthouse, 401 W. Washington St., Phoenix, Arizona, 85003, to determine whether to grant final approval of the proposed settlement.

If approved, each of the 177 absent class members will receive an equal distribution of the $4,000 class fund—or $22.60—under the settlement.  The class members will receive this amount in exchange for a limited release of claims arising from Defendant's act of mailing a collection letter.  In exchange for her general release of all claims, Plaintiff will receive $1,000 pursuant to the FDCPA and a class representative incentive award of $1,000.  Class counsel will be eligible for an award of attorney's fees and costs not to exceed $15,000.

No class member has objected to the proposed settlement or requested to be excluded from the class.  The proposed settlement is fundamentally fair, reasonable, adequate, and in the best interests of the class.  If this action were to proceed to the merits, Class Counsel believes that the class would receive $658.33—or $3.72 per class member—due to Defendant's insignificant balance sheet net worth and the difficulty in proving any actual damage suffered by the class members.  While this action meets the criteria of Rule 23, continued litigation would serve no one other than the attorneys in this case.  The Court should grant final approval.

## II.     Relevant Background

In September 2017, Plaintiff's vehicle was repossessed. Exhibit B at ¶ 4. Ford Motor Credit turned over Plaintiff's account to Defendant to collect the deficiency balance after the vehicle was sold at auction. *Id*. at ¶¶ 8, 11. On January 8, 2018, Defendant—a collection law firm—sent Plaintiff an initial collection notice containing the statutorily required notices regarding her right to dispute the debt under the FDCPA. Doc. 1-1. On January 29, 2018, Defendant sent Plaintiff another letter stating, in relevant part, "Unless we hear from you *now*, we can only assume that you are refusing to voluntarily address this matter. While it is not our wish to do so, failing to hear from you, we will be *compelled to sue*." Doc. 1-2 (emphasis added).

Plaintiff filed this action on March 27, 2018 against Defendant alleging that it violated § 1692g(b) of the FDCPA through this subsequent letter, which was mailed during the critical 30-day dispute period set forth in 15 U.S.C. § 1692g. Doc. 1 at ¶ 34. Defendant was served the summons and complaint on April 10, 2018. Doc. 7 at 2. By May 1, 2018, the parties had worked out the general details of the proposed settlement, Exhibit B at ¶¶ 15-22, contingent upon Defendant's production of its balance sheet and evidence supporting its representation about the size of the class. Exhibit A at ¶¶ 13-14. This is not uncommon in FDCPA actions, where (1) the violation is clear, (2) the facts make the action ideal for class treatment, (3) the class size is small, and (4) the defendant's balance sheet net worth is minimal. *Id*. at ¶¶ 15-19.

On May 20, 2018, Defendant's counsel sent Plaintiff's attorney a draft of a class settlement agreement. *Id*. at ¶ 20. The original agreement sought a release from the

class members of any claims that could assert against Defendant "as a result of alleged violations of *the state or federal law that were alleged or could have been alleged* in this Litigation." *Id*. at ¶ 21. On May 24, 2018, pursuant to the instruction in the Court's May 17, 2018 order, Doc. 11 at 2, Plaintiff informed the Court that the parties were engaging in negotiations to settle this action on a classwide basis. Doc. 12.

On May 30, 2018, Plaintiff's attorney sent a revised draft of the agreement that limited the scope of the class members' release to say "as a result of *alleged violations of the FDCPA that were alleged* in this Litigation." *Id*. at ¶ 22. On June 15, 2018, Defendant's counsel sent a further revised draft of the agreement that expanded the scope of the release to include "as a result of alleged violations of *the FDCPA or comparable state law* that were alleged in this Litigation." *Id*. at ¶ 23.

Plaintiff's attorney—as well as Class Counsel[1]—determined that this was a fair compromise, *id*. at ¶ 24, and this is the language that went into the proposed settlement agreement. *See* Doc. 26-1 at 8. The parties continued to exchange drafts of the settlement agreement, addressing less significant matters, such as Defendant's desire to use a third-party claims administrator and how to handle any undistributed funds. Exhibit A at ¶¶ 25-30. The parties also exchanged drafts of the motion for preliminary approval and supporting exhibits. *Id*. at ¶ 26.

---

[1] Class Counsel, David N. McDevitt, took over the handling of Plaintiff's action for her prior counsel, Joe Panvini, on August 1, 2018. Exhibit A at ¶ 4. Prior to filing the motion for preliminary approval, Mr. McDevitt reviewed all of the parties' settlement negotiations and made an independent assessment of the fairness and reasonableness of the proposed settlement. *Id*. at ¶¶ 5-12.

On July 18, 2018, Defendant served its Mandatory Initial Discovery Statement. *See* Doc. 17; *see also* Exhibit A at ¶ 31. In the section regarding relevant electronically stored information, the MIDS disclosure lists: "History entries in multiple accounts reflecting subject templated letters produced and sent to various consumer debtors within the 30 day validation period alleged (list of 177 available)." *Id*. at ¶ 33. The MIDS disclosure further lists "Defendant's books and records reflecting its net worth." *Id*. at ¶ 34. The MIDS disclosure is signed and notarized by Kenneth W. Seidberg, Defendant's founder and an attorney who has been licensed in the State of Arizona since 1974. *Id*. at ¶¶ 35-36.

The stated class size (and, thus, the contemplated per class member recovery) was in accordance with Plaintiff's counsel's expectations. *Id*. at ¶ 37. Satisfied that Plaintiff was now in a position to compel Defendant's production of these documents, in the event that Defendant should attempt to withhold them, Plaintiff's counsel submitted a notice of settlement on July 23, 2018. Doc. 18. Therein, the parties requested an additional 30 days in which to submit a joint motion for class certification and preliminary approval of class action settlement. *Id*. The parties also requested that the case management conference be vacated. *Id*.

The Court granted the request and ordered the parties to submit a status report no later than September 24, 2018. Doc. 19. Because she still did not have the documents disclosed in Defendant's MIDS disclosure, however, Plaintiff served her MIDS disclosure on July 27, 2018. Doc. 20. On July 31, 2018, Plaintiff's counsel demanded

that these documents be produced. Exhibit A at ¶ 38. On August 1, 2018, Plaintiff's case was reassigned within her counsel's law firm to Class Counsel. *Id*. at ¶ 4.

The reassignment resulted in a short delay, as it required Class Counsel to review all of the parties' settlement negotiations to date and make an independent assessment of the fairness and reasonableness of the proposed settlement. *Id*. at ¶¶ 5, 39. During this period, Plaintiff contacted her prior attorney to ask why they were not also pursuing claims against Ford Motor Credit for its debt collection practices. Exhibit B at ¶ 24. Class Counsel responded to Plaintiff's concerns in telephone call on August 17, 2018. *Id*. at ¶¶ 25-28. Class Counsel also performed a further review of all the documents that Plaintiff provided regarding the case. *See* Exhibit A at ¶¶ 40-43.

After determining that Plaintiff would proceed with the proposed class settlement, Class Counsel informed Defendant to provide the class list and the documents reflecting its net worth. *Id*. at ¶ 44. On August 28, 2018, Defendant's counsel sent to Class Counsel: (1) a list containing 178 debtor numbers and times and dates associated with each number, and (2) a balance sheet for the year ending December 31, 2017. *Id*. at ¶ 45. Each document appears to reflect Defendant's genuine business records. *Id*. at ¶ 46. Row 143 in the list of debtor numbers is "576227" and is associated with a time and date of 1/29/18 11:45a. *Id*. at ¶ 48. This matches the file number and date of the letter that gives rise to Plaintiff's claim. *See* Doc. 1-2.

Defendant's balance sheet shows $224,868.73 in total assets, $159,036.10 in total liabilities, and $65,832.63 in total capital. Exhibit A at ¶ 50. Defendant therefore has a "balance sheet net worth" of $65,832.63. *Id*. at ¶ 51. The balance sheet contains a

footnote discussing Defendant's going concern (i.e., its projected revenues from the inventory of accounts that have been assigned to it for collection).  *Id*. at ¶ 54.  The going concern of the debt collector, however, is not included when calculating net worth.  *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("In sum, the words of the statute, an understanding of its purposes, and cases interpreting the term net worth indicate that this term means balance sheet or book value net worth. As such, goodwill should not be factored into the calculation of the defendant's net worth.").

Upon reviewing this information, Class Counsel came to the conclusion that the documents are authentic and accurately depict Defendant's earlier representations during negotiations about its financial condition, but that Defendant was not eager to disclose them, due to the discussion of its going concern value.  *Id*. at ¶ 55.  The documents contain information which is both internally consistent and independently verifiable.  *Id*. at ¶ 56.

For example, this footnote states that Defendant's projected revenue for 2018 is, conservatively, $2.55 million.  *Id*. at ¶ 57. This figure is within $140,000 of Dun and Bradstreet's estimated sales volume for Defendant.  *Id*. at ¶ 58.  At the same time, the footnote also states that it projects that Defendant will "at least" break even in 2018, and the net income line for the year ending December 31, 2017 is -$667.76.  *Id*. at ¶¶ 59-60.

In addition, the footnote discusses the volume and lifecycle of its inventory of accounts.  *Id*. at ¶ 61.  From this, Class Counsel estimated that Defendant obtains roughly 1,000 to 2,000 new accounts each year.  *Id*. at ¶ 62.  The list of debtor numbers, which is arranged sequentially and has corresponding dates that are roughly

chronological, spans a range of 1,471 accounts. *Id*. at ¶ 63. Class Counsel has been certified as class counsel in another action involving a collection law firm that collected on judgments obtained on behalf of Ford Motor Credit. *Id*. at ¶ 10. In that case, the defendant had established ongoing payment plans with roughly 900 consumers. *Id*. at ¶¶ 64-65. The similarity in account volume reinforced Class Counsel's view that the documents that Defendant provided were authentic. *Id*. at ¶ 66. Moreover, Defendant has only been sued in federal court eight times between the 2000 and 2018, which is a further indication that its collection practice is relatively small. *Id*. at ¶¶ 67-68.

The claimed class size of 178 indicates that, in roughly 1 in 8 cases, Defendant sent a second[2] follow-up collection notice mentioning that the debtor had not responded to any of its communications. *Id*. at ¶ 69. Class Counsel finds this figure to be credible based on its experience litigating FDCPA actions against debt collection law firms. *Id*. at ¶ 71. Collection law firms typically forgo sending a demand letter and instead immediately initiate a lawsuit for some portion of the accounts they are assigned. *Id*. at ¶ 72. A large fraction of the initial letters mailed will be returned as undeliverable, meaning a follow up notice will not be mailed. *Id*. at ¶ 73. And some portion of consumers will respond to either the initial collection letter or the first follow-up notice, such that the second follow-up notice would not be sent. *Id*. at ¶ 74. Class Counsel also considered that Defendant has little incentive to misrepresent the size of the class, since the cost of distributing class notice to a few hundred additional class members is

---

[2] Defendant sent Plaintiff a first follow-up collection letter dated January 19, 2018, but this is not relevant to her claim. *Id*. at ¶ 70.

marginal, while the risk of misrepresenting the class size would be extremely high to an attorney with over 40 years in practice. *Id*. at ¶ 75.

On September 25, 2018, the parties jointly moved for conditional class certification and preliminary approval of class settlement. Doc. 24; Doc. 26. On October 23, 2018, the Court granted the motion. Doc. 27. In the Court's order granting preliminary approval, the advised the parties that "on or before the fairness hearing, the parties should present or be prepared to present evidence regarding: (1) the adequacy of the settlement negotiation process, (2) Plaintiff's substantial efforts taken as class representative and any actual damages she or other Proposed Class members sustained as a result of Defendant's actions, and (3) Defendant's net worth." *Id*. at 21.

Class notice, as well as the order resetting the final fairness hearing, *see* Doc. 31, were mailed to all 178 class members. Exhibit D at ¶¶ 7-11. Of those, notice is presumed to have been delivered to 149 class members, with 29 notices having been returned as undeliverable with no forwarding address and no additional address available through a LexisNexis Accurint search. *Id*. at ¶¶ 12-15. No class member has objected to the proposed settlement, nor has any class member requested exclusion. *Id*. at ¶¶ 16-17; Exhibit A at ¶¶ 76.

**III.   The Court should grant final approval of the settlement.**

The proposed settlement would result in a recovery to the class members that exceeds the amount that they would likely receive if this action was pursued to the merits. The Seventh Circuit has held, in a persuasive opinion, that the defendant's net worth under the FDCPA means "balance sheet net worth." *Sanders*, 209 F.3d at 1004.

In other words, the going concern of the debt collector—which takes into consideration the goodwill and expected future earnings—is not part of the debt collector's net worth. This ruling has not been seriously challenged by FDCPA attorneys in nearly twenty years. The Ninth Circuit has recently held, however, that the plaintiff in an FDCPA class action has the burden of proving the debt collector's net worth at trial. *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1108 (9th Cir. 2018).

Thus, Plaintiff would need to conduct extremely costly discovery and prepare an expert report on Defendant's "fair market value net worth" in order to proceed on an alternative theory of damages. Even if this figure could be established as greater than $400,000, there is a strong chance that the Court would ultimately rule that the defendant's net worth is its "balance sheet net worth." If the Court ruled otherwise, there is a strong possibility that this issue would be appealed—since the debt collection industry at large has a substantial interest in challenging such a ruling—which would further delay relief to the class.

Pursuing this strategy would also introduce additional opportunities for Defendant to defeat class certification or Plaintiff's individual claim. After conducting a reasonable and sufficient investigation into Defendant's "balance sheet net worth," Class Counsel has concluded that the benefit to the class through the proposed settlement is fair, adequate, reasonable, and in the best interests of the Class. All indications, both from Defendant's own evidence and publicly available information about Defendant, are that its "fair market value net worth" would not be so great as to justify this risk, since Defendant is not a large enterprise.

Furthermore, the claims in this action are not well-suited to establishing actual damages—for Plaintiff or any other class member. The concern regarding overshadowing under § 1692g(b) is that the consumer will overlook his right to dispute the validity of the debt and thereby obtain documentation reflecting that it is valid. The FDCPA provides statutory damages for the very reason that the harm caused by these violations are often intangible or difficult to prove or measure. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Not only would a plaintiff need to establish that the offending language caused him to overlook his rights, in fact, he would also need to prove that (1) he would have exercised those rights in the absence of the offending language, and (2) had he exercised those rights, he would not have been damaged. Class Counsel is unaware of any action in which a consumer has recovered actual damages as a result of a violation of § 1692g(b). Exhibit A at ¶ 77.

The class incentive award to Plaintiff here is reasonable and justified. As detailed in Plaintiff's affidavit, she contacted Class Counsel regarding the actions of Defendant's client. Exhibit B at ¶¶ 4-9. The proposed class settlement requires Plaintiff to give a general release of all claims, including a release of claims against Defendant's clients. *See* Doc. 26-1 at 6 (section 1.12 defining "Defendant" as including Defendant's clients), 7-8 (section 1.20 providing a broader release for Plaintiff only). The rest of the class members are only releasing claims that they "could assert against Defendant as a result of alleged violations of *the FDCPA or comparable state law that <u>were alleged</u>* in this Litigation." *Id*. at 8 (emphasis added).

This release is significantly more limited. Courts have concluded that class incentive awards may be justified by "the broader release to which [the named-plaintiffs] have agreed." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011). Although this action did not require Plaintiff to sit for a deposition or attend a settlement conference with a third-party neutral, her efforts have benefited the class as a whole. Plaintiff's decision to enter into a class settlement agreement also came at the expense of obtaining a more speedy resolution to this action. Simply put, if Defendant had not offered Plaintiff an additional $1,000 payment, she would have had no personal incentive to pursue the recovery of $4,000 for the rest of the class members. Defendant could have made an offer of judgment to her for $1,001, plus her reasonable attorney's fees and costs—and Class Counsel believes it likely would have, based on the strength of her claim.

## IV.  Conclusion

As detailed in the parties' preliminary approval motion, the proposed settlement is fair, reasonable, and adequate. The class members will receive far more than they would likely receive if litigation was pursued further. The possibility of obtaining a greater recovery is extremely low and would come at a risk to the class's ability to recover anything. The settlement is the result of an arms-lengths negotiation, in which Class Counsel conducted a sufficient investigation into the potential for a greater recovery for the class. No class member has objected or requested that he or she be excluded from the class, after receiving notice from a third party claims administrator. The additional incentive payment to Plaintiff is fair, both in light of her willingness to

engage in this much longer litigation and the broader release of claims that she is giving in the settlement agreement. Class Counsel's attorney's fees will be determined by the Court on application. The Court should grant final approval of the settlement. A proposed order is submitted herewith.

Respectfully submitted on March 14, 2019.

| | |
|---|---|
| /s/ David N. McDevitt | /s/ Kenneth Seidberg |
| David N. McDevitt | Kenneth Seidberg |
| Russell S. Thompson IV | Seidberg Law Offices, P.C. |
| Thompson Consumer Law Group, PLLC | 2412 E Campbell Avenue |
| 5235 E. Southern Ave., D106-618 | Phoenix, AZ 85016 |
| Mesa, AZ 85206 | Tel: 602-248-8117 |
| Telephone: (602) 845-5969 | Fax: 602-957-5287 |
| Facsimile: (866) 317-2674 | ken@seidberglaw.com |
| dmcdevitt@ThompsonConsumerLaw.com | |
| rthompson@ThompsonConsumerLaw.com | /s/ Manuel H. Newburger |
| ATTORNEYS FOR PLAINTIFF | Manuel H. Newburger |
| | Texas Bar No. 14946500 |
| | Barron & Newburger, P.C. |
| | 7320 N. MoPac Expy., Suite 400 |
| | Austin, Arizona 78731 |
| | Telephone: (512) 649-4022 |
| | Facsimile: (512) 279-0310 |
| | mnewburger@bn-lawyers.com |
| | ATTORNEYS FOR DEFENDANT |

# **CERTIFICATE OF SERVICE**

I certify that on March 14, 2019, I filed the foregoing document with the Clerk for the U.S. District Court of Arizona using the CM/ECF system which sent notification of the same to Defendant through counsel of record below as follows:

Kenneth Seidberg
Seidberg Law Offices, P.C.
2412 E Campbell Avenue
Phoenix, AZ 85016
Tel: 602-248-8117
Fax: 602-957-5287
ken@seidberglaw.com

Manuel H. Newburger
Barron & Newburger, P.C.
7320 N. MoPac Expy., Suite 400
Austin, Arizona 78731
Telephone: (512) 649-4022
Facsimile: (512) 279-0310
mnewburger@bn-lawyers.com

**ATTORNEYS FOR DEFENDANT**

s/ David McDevitt
David McDevitt
